UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DANA R. WETTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | No. 1:12-cv-00364-TAB-RLY |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I.    Introduction**

Plaintiff Dana Wetter appeals Acting Commissioner Carolyn Colvin's decision denying her disability and disability insurance benefits. Wetter's impairments are fibromyalgia, degenerative changes along her lumbar spine, bilateral carpal tunnel syndrome, right plantar fasciitis/heel spur syndrome, and both affective and anxiety-related disorders. [A.R. at 42.] The Administrative Law Judge denied Wetter's application for disability and DIB after concluding that she was able to perform other jobs in the national economy. Wetter contends that the ALJ's decision is erroneous for several reasons: (1) the ALJ failed to address SSR 85-15 and the effects of stress in the workplace, (2) the ALJ erroneously omitted the moderate limitation on social functioning, concentration, persistence, and pace from the hypothetical posed to the vocational expert, and (3) the ALJ failed to give controlling weight to the treating physicians' opinions. For the reasons below, Wetter's brief in support of appeal [Docket No. 13] is denied, and the Commissioner's decision is affirmed.

## II. Discussion

### A. Standard of Review

The Social Security regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled: whether the plaintiff (1) is currently unemployed, (2) has a severe impairment, (3) has an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations, (4) is unable to perform her past relevant work, and (5) is unable to perform any other work in the national economy. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512–13 (7th Cir. 2009). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (quoting *Zalewski v. Heckler,* 760 F.2d 160, 162 n.2 (7th Cir. 1985)). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id*. The ALJ denied Wetter's application at step five, concluding that she is able to perform other jobs in the national economy.

The Court must uphold the ALJ's decision if substantial evidence supports his findings. *Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003). "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The ALJ is obligated to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). If evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The ALJ, however, need not mention every

piece of evidence, so long as he builds a logical bridge from the evidence to his conclusion. *Denton*, 596 F.3d at 425.

> B.   *Effects of stress in the workplace*

Wetter contends that the ALJ failed to account for or discuss her ability to handle stress in the workplace. [Docket No. 13 at 15 (Brief at 14).] The Court disagrees. The ALJ's decision acknowledged Wetter's low tolerance for stress and noted that Wetter's

> social functioning is moderately impaired. She apparently has a low tolerance for stress and, based on what she told Dr. Leiphart about her former supervisor, she has problems dealing with difficult people, too. Yet, both the Claimant and her then husband, Robert Wetter ("Mr. Wetter"), acknowledged she has no problem getting along with people. One doctor, in fact, went so far as to characterize her as "delightful." The Claimant converses with people in person, via telephone or over the internet.

[A.R. at 29–30.]

The ALJ concluded that Wetter's "mental impairments have not affected her cognitive functioning despite her claims to the contrary. She is alert and oriented in all spheres with clear, relevant speech and a logical, goal-directed thought process without psychosis. She can think abstractly and she has no memory deficits." [*Id.* at 36.] Wetter argues that the ALJ's decision lacks a sufficient articulation of the evidence so as to build an accurate and logical bridge from evidence to conclusion. Wetter wants the ALJ to provide a more significant discussion of stress in the workplace, but the ALJ's analysis of her social functioning is sufficient to build a logical bridge to the conclusion that Wetter is not cognitively impaired. *See Denton,* 596 F.3d at 425–26. Accordingly, this challenge to the ALJ's assessment of stress in the workplace fails.

      C.      *Concentration, Persistence and Pace*

Wetter also claims that the ALJ's hypothetical did not provide the VE with information adequate to determine whether she could perform jobs in the national economy. [Docket No. 13 at 18 (Brief at 17).] Wetter devotes the majority of her argument in setting up the standard under *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) and other relevant case law. [Docket No. 13 at 18–19 (Brief at 17–18).] Indeed, Wetter's brief simply regurgitates, in block-quote fashion, about a page of discussion from *O'Conner-Spinner*. [*Id.*] Wetter's actual argument concerning the ALJ's hypothetical consists of merely one paragraph and makes conclusory assertions without providing any meaningful analysis:

> By not addressing Ms. Wetter's limitations in social functioning, concentration, persistence and pace in his hypothetical, the ALJ failed to elicit accurate information regarding the availability of jobs contrary to law . . . No evidence exists here that the VE reviewed Ms. [Wetter's] medical history, as opposed to her work history, or heard testimony about the limitation. Nor did the hypothetical implicitly cover the essential meaning behind such limitations or include the underlying conditions, such as adding repetitive, low stress, or low-production work or referencing her chronic pain syndrome.

[Docket No. 13 at 19–20 (Brief at 18–19).]

Such arguments are deemed waived for being perfunctory, undeveloped, and conclusory. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). Absent a developed analysis, the Plaintiff's challenge fails.

Even overlooking this significant shortcoming, the Magistrate Judge finds that the ALJ did address the limitations of social functioning, concentration, persistence, and pace. In *O'Connor-Spinner,* the Seventh Circuit explained that "[i]n most cases . . . employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." 627 F.3d at 620. Yet, the Seventh Circuit has "let stand an ALJ's hypothetical omitting the terms

'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id*. The ALJ's hypothetical provided exactly that. The ALJ's hypothetical discussed the number of hours Wetter could work, the weight she could carry, and limited her work to "simple repetitive tasks that allow only occasional contact with the public and co-workers" despite contrary evidence that Wetter was a delightful individual who traveled, read books, and completed crossword puzzles. [A.R. at 30, 38, 39.]

Additionally, the ALJ's RFC determination was consistent with the state agency reviewers. In *Hearn v. Astrue*, No. 1:11-CV-00394, 2012 WL 4361452, at *5 (N.D. Ind. Sept. 24, 2012), the court found that a RFC determination and hypothetical appropriately addressed the claimant's moderate limitations in concentration, persistence, and pace where the RFC was consistent with opinions of state agency reviewers. Like *Hearn,* Wetter's RFC determination was similar to the recommendations of reviewing Drs. Fletcher and Oberlander. [A.R. 38–39.] Dr. Fletcher determined that Wetter had moderate social functioning difficulties and moderate difficulties in maintaining concentration, persistence, or pace. [*Id*. at 349.] In providing a recommendation, Dr. Fletcher concluded Wetter should work with less complicated interactions with people. [*Id* at 355.] Dr. Oberlander's recommendation stated that the claimant "retains the capacity to engage in simple, repetitive work activities, which require some accommodation to less than extensive interactions with the public, with coworkers, and supervisors." [*Id*. at 614.] Dr. Oberlander also noted "I believe that she retains the mental ability to remember [and] execute simple work instructions." [*Id*.] The ALJ's RFC determination limited Wetter to "simple repetitive tasks that allow only occasional contact with the public and co-workers." This

is consistent with the state agency reviewers' recommendations and appropriately addresses social functioning, concentration, persistence, and pace.

        D.      *ALJ's Evaluation of the Treating Sources Opinions*

Wetter contends that the ALJ did not properly evaluate the opinions of her treating sources. She claims that "the ALJ made no statements throughout the record regarding whose opinion he gave controlling weight, nor did he pay any heed to the required checklist of factors that he must consider." [Docket No. 13 at 21 (Brief at 20).] Citing to *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010), Wetter emphasizes that in evaluating the opinions of treating physicians, the "ALJ must consider: the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and consistency and support for the physician's opinion." However, the Commissioner asserts that the ALJ adequately considered and gave sufficient reasons for discounting the opinions of Wetter's treating physicians—Drs. Cannon, Allison, Patel, and Mallace—in the RFC determination. [Docket No. 18 at 17.] The Commissioner also indicates that the treating physicians' opinions—particularly Drs. Cannon, Patel, and Mallace—do not establish the disabling symptoms. [*Id.* at 19.] The Court agrees.

The ALJ's decision provides sufficient reasoning for discounting the treating physicians' opinions. In fact, the ALJ's decision specifically addressed the opinions of Drs. Cannon, Allison, Patel, and Mallace. [A.R. at 27 n.4, 35, 38.] The ALJ concluded that Dr. Cannon's opinion is "not indicative of Wetter's long term functioning" as Wetter continued to complain of her inability to concentrate even after Dr. Cannon reported improvements in her symptoms. [*Id.* at 35.] The ALJ gave "some weight but not much" to Dr. Allison's opinion. [*Id.* at 38.] The ALJ found moderate limitations in Wetter's social functioning, while Dr. Allison found the same

impairments to be minor. [*Id*. at 38.] The ALJ discredited Dr. Allison's determination of a minor impairment in social functioning because it was inconsistent with Dr. Allison's agoraphobic diagnosis. [*Id*.] The ALJ discredited Dr. Mallace's opinion on Wetter's mental health because Dr. Mallace was a rheumatologist and therefore not qualified to give an opinion on this matter. [*Id*. at 27 n.4.] Taking the above findings into account, the Court finds that the ALJ provided sufficient reasoning for discounting the opinions of these treating physicians.

The ALJ's decision considered Wetter's treating physicians' skepticisms concerning her request for time off of work. Treating physician Dr. Patel urged Plaintiff to continue to work. [*Id*. at 41.] In fact, Dr. Patel refused to authorize time off of work for Wetter, suggested she receive psychiatric help, and required a rheumatologist to authorize disability. [*Id.* at 40.] Dr. Mallace, her rheumatologist, also "did not believe that she was physically incapable of working." [*Id*. at 41.] The ALJ, like Drs. Patel and Mallace, also questioned Wetter's request for disability: "I have a disconcerting perception that the Claimant consciously laid the groundwork to acquire disability benefits." [*Id.*] To the extent that the ALJ did credit the treating physicians' opinions, the ALJ's determinations were consistent with those of Wetter's physicians.

## III.     Conclusion

For these reasons, Wetter's brief in support of appeal [Docket No. 13] is denied and the Commissioner's decision is affirmed.

Date: 9/9/2013

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov